**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| MOSS GROVE II PROPERTY OWNERS' ASSOCIATION, INC., ) ) ) | |
| Plaintiff, ) | No. 2:22-cv-04287-DCN |
| ) vs. ) | **ORDER** |
| ) LENNAR CAROLINAS, LLC, ) ) | |
| Defendant. ) ) | |

The following matter is before the court on defendant Lennar Carolinas, LLC's ("Lennar") motion to dismiss, ECF No. 4. For the reasons set forth below, the court grants in part and denies in part the motion.

## I. BACKGROUND

Plaintiff Moss Grove II Property Owners' Association, Inc. (the "Association") is a nonprofit corporation consisting of the property owners of the Moss Grove II subdivision (hereinafter, "Moss Grove") in Moncks Corner, South Carolina. Lennar participated in the development, construction, marketing, and sales of the homes in Moss Grove.

On August 19, 2014, Lennar executed two documents related to the governance of Moss Grove: (1) the "Declaration of Covenants, Restrictions and Easements for Moss Grove II" (the "Declaration") and (2) the "Bylaws of Moss Grove II Property Owners' Association." The documents were recorded in the Berkeley County Register of Deeds on September 18, 2014. The Declaration created the Association and specified that the "Declarant" and every owner of a unit would serve as members. ECF No. 4-2 at 18. The

1

Declaration named Lennar as the "Declarant," id. at 10, and Lennar executed the document as the Declarant, id. at 62.

As relevant to the instant motion, Article 15.4 of the Declaration, titled "Litigation," states in part:

> No judicial or administrative proceeding with an amount in controversy exceeding $100,000.00 . . . will be commenced or prosecuted by the Association unless approved by 75% or more of the votes of the entire Association, by Referendum or at a duly held meeting of Members called for the purpose of approving the proceeding, which percentage will also constitute the quorum required for any such meeting. This Section will not apply, however, to (a) actions brought by the Association to enforce the provisions of this Declaration (including, without limitations, the foreclosure of liens); (b) the imposition and collection of Assessments; (c) proceedings involving challenges to ad valorem taxation; (d) counterclaims brought by the Association in proceedings instituted against it; or (e) actions brought by the Association to enforce written contracts with its suppliers and service providers.

Id. at 55.

As generally relevant to the suit, Lennar, as the Declarant, created and maintained a capital reserve fund for the Association to use on maintenance and repairs within the subdivision, and it had full decision-making authority over the Association and how it spent the funds. ECF No. 1-1, Compl. ¶¶ 8–9. The Association alleges that during the time that Lennar served as the Declarant, Lennar was obligated to ensure that common areas and structures were properly maintained. Lennar allegedly breached its duty by failing to properly care for, maintain, and repair the Moss Grove Plant Dam I, D3467 (the "Dam"). Lennar also allegedly refused to provide the Association with sufficient funds to make the repairs.

Lennar remained the Declarant until October 23, 2019, when the members of the Association held a transition meeting and formally elected a Board of Directors. At that point, Lennar relinquished its rights as the Declarant and turned over authority to the

members, who now have full control over the Association. Nevertheless, the Association claims that the Dam's poor conditions dating back to Lennar's time as the Declarant have caused ongoing health and safety risks to members of the Association, necessitating the instant action.

On October 24, 2022, the Association filed a complaint against Lennar in the Berkeley County Court of Common Pleas, alleging seven causes of action: (1) negligence/gross negligence, (2) negligent misrepresentation, (3) breach of contract, (4) breach of express warranty, (5) breach of implied warranty of workmanlike service, (6) breach of fiduciary duty, and (7) violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10 et seq. ECF No. 1-1, Compl. On November 28, 2022, Lennar removed the action to this court pursuant to 28 U.S.C. § 1332. ECF No. 1 ¶ 8.

On December 12, 2022, Lennar filed its motion to dismiss for failure to state a claim. ECF No. 4. The Association responded on December 22, 2022. ECF No. 5. Lennar did not file a reply, and the time to do so has now elapsed. The court held a hearing on the motion on February 9, 2023. ECF No. 8. As such, the motion has been fully briefed and is now ripe for review.

## II.  STANDARD

### A. Motion to Dismiss

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule

3

12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### B. Standing

If a plaintiff does not have standing or the controversy is not sufficiently ripe, the court must dismiss the action for lack of subject matter jurisdiction. See Middleton v. Andino, 488 F. Supp. 3d 261, 278 (D.S.C. 2020), appeal dismissed as moot, 2020 WL 8922913 (4th Cir. Dec. 17, 2020) ("Standing implicates the court's subject matter jurisdiction and is governed by Federal Rule of Civil Procedure 12(b)(1)."). "[T]he irreducible constitutional minimum of standing contains three elements." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). First, a plaintiff must demonstrate an "injury-in-

fact," which is a "concrete and particularized . . . invasion of a legally protected interest." Id. Second, "there must be a causal connection between the injury and the conduct complained of, meaning that the injury must be "fairly . . . trace[able] to the challenged action of the defendant." Id. Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id.

The plaintiff bears the burden of proving that standing exists. Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty., 523 F.3d 453, 459 (4th Cir. 2008). Importantly, the overriding motion-to-dismiss standard applies to the inquiry of standing, meaning that "a suit will not be dismissed for lack of standing if there are sufficient 'allegations of fact'—not proof—in the complaint or supporting affidavits." Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 65 (1987). Plausible, good-faith allegations that, if true, would satisfy the standing requirements will sufficiently preclude dismissal. See id.; see also Iqbal, 556 U.S. at 678. Nevertheless, the court may "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).

### III.  DISCUSSION

Lennar moves for dismissal on two grounds. First, Lennar argues that the entire complaint should be dismissed based on the Association's lack of standing. Second, Lennar argues that the Association's second cause of action for negligent misrepresentation should be dismissed for failure to state a claim. The court addresses each argument in turn.

### A. Standing

First, Lennar moves to dismiss the complaint for lack of standing, arguing that the Association failed to satisfy the conditions precedent for commencing a lawsuit as set forth in the Declaration. The Declaration specifies that any judicial proceeding with an amount in controversy exceeding $100,000 may not be brought by the Association unless approved by at least seventy-five percent of the votes by its members. Lennar contends that there are no allegations in the complaint about whether this condition was satisfied or waived, and as such, the Association has failed to meet its burden to prove that standing exists. The court determines below that the most judicially-efficient result is to find that the Association has plausibly alleged that the conditions for litigation as specified in the Declaration do not apply in this case—meaning a vote or other specified procedure was not a condition precedent for bringing this action. Because this issue is likely to resurface, the court further surveys the legal landscape of homeowner association standing (as the court views it) and denies the motion on those grounds as well.

#### 1. Applicability of the Litigation Provision

In support of its position, Lennar cites to an unpublished order from within this district. See Tinsley et al. v. Lennar Carolinas LLC, No. 2:22-cv-00432-RMG (Mar. 30, 2022), ECF No. 9. On the surface, the circumstances in Tinsley appear to mirror the circumstances presented here. In Tinsley, three to ten[1] of the condominium owners out of a total of seventy-two owners who made up the homeowners' association sued Lennar,

---

[1] The complaint in the case was filed by three of the condominium owners as a derivative action on behalf of the homeowners' association. Compl., Tinsley et al. v. Lennar Carolinas LLC, No. 2:22-cv-00432-RMG (Mar. 30, 2022), ECF No. 1-1. The court later stated in its order on reconsideration that the action had been brought by ten of the seventy-two owners. Id., ECF No. 14 at 1.

alleging certain defects in the construction of common areas. Id. at 1. The homeowners' association was governed by a master deed that contained a section specifying that any decision to commence litigation must be approved by owners making up at least sixty-seven percent of the ownership interest. Id. at 4–5. Lennar argued, as it does here, that the plaintiffs failed to comply with the section prior to making a demand from Lennar and commencing litigation.

The court in Tinsley agreed and found that the plaintiffs failed to state a plausible claim for standing. Id. at 5–6. In doing so, the court noted that compliance with the master deed's litigation section was required to bring a derivative suit on behalf of the homeowners' association under Federal Rule of Civil Procedure 23.1. Id. at 5. The court also noted that the plaintiff bears the burden of demonstrating a plausible claim of standing. Id. at 6. Accordingly, the court held that the plaintiffs' failure to rebut Lennar's argument and failure to present evidence that they complied with the section spelled defeat for the plaintiffs based on principles of standing. Id. at 5–6.

This court could certainly resolve this motion by relying on Tinsley. However, as the court discusses in the following section, the question of whether to apply Tinsley is not clear cut and presents additional wrinkles that the parties will likely wish to brief. Instead, the court finds that the motion may be resolved without fully deciding the issue of standing at this stage of the proceedings. Specifically, even if the court adopted Tinsley in its entirety, the court would still deny the motion to dismiss based on factual differences between the cases. Since the court can reach a ruling on the motion without directly addressing the standing question, the court elects to do so and denies the motion to dismiss. See Bergmann v. Fed. Nat'l Mortg. Ass'n (Fannie Mae), 2011 WL 2784171,

at *2 (D.S.C. July 12, 2011) (citing <u>Barbour v. Int'l Union</u>, 640 F.3d 599, 617–18 (4th Cir. 2011)) ("[J]udicial restraint requires [the] court to avoid reaching constitutional questions prior to the necessity of deciding them[.]").

Importantly, the section at issue in the Declaration contains additional carve-out provisions stating that the Section does not apply to

> (a) <u>actions brought by the Association to enforce the provisions of this Declaration</u> . . . ; (b) the imposition and collection of Assessments; (c) proceedings involving challenges to ad valorem taxation; (d) counterclaims brought by the Association in proceedings instituted against it; or (e) <u>actions brought by the Association to enforce written contracts with its suppliers and service providers</u>.

ECF No. 4-2 at 55 (emphases added).

Although the master deed in <u>Tinsley</u> similarly excluded certain actions from the requirement that they be brought by sixty-seven percent of the membership, that provision only excluded actions to collect or enforce assessments, fines, late charges, penalties, costs and expenses, etc. <u>Tinsley</u>, No. 2:22-cv-00432-RMG (Feb. 18, 2022), ECF No. 4-6 at 44. The master deed did <u>not</u> contain exclusions like the ones found in the Declaration here. Viewed in the light most favorable to the Association, the instant action could be considered either an action brought to enforce the provisions of the Declaration, an action to enforce written contracts with suppliers and service providers, or both. This interpretation was further underscored at the hearing. In claiming that Lennar should be permitted to assert that the Association lacks standing, counsel for Lennar argued that Lennar could not be considered a "stranger" to the Declaration because the Association's claims for breach fiduciary duty and breach of contract arose from the terms of the Declaration at the time Lennar was still a party to the Declaration. In so arguing, Lennar effectively conceded that at least some of the Association's claims

8

fall within the carve-out provisions of the litigation section because the Association is suing to enforce the provisions of the Declaration.

At the hearing, the court raised this possibility that the Association's actions did not implicate the prerequisites to litigation. In response, counsel for Lennar added that at most, only some of the Association's claims fall within the carve-outs while others did not. Lennar suggested, as a result, that the court could sever and dismiss certain claims for lack of standing. Although Lennar did not raise the argument in its briefs, the court recognizes that other district courts have, in the past, severed claims that a plaintiff did not have standing to assert. See, e.g., Garner v. Buzz Finco LLC, 2022 WL 1085210, at *4 (N.D. Ill. Apr. 11, 2022) (severing one of the plaintiff's claims because he did not have standing to bring it in federal court and remanding the claim to state court); Benton v. Clarity Servs., Inc., 2017 WL 345583, at *2 (N.D. Cal. Jan. 24, 2017) (severing claims for which the court found plaintiff lacked standing and remanding the claims to state court). Here, the court finds it would be premature to conclude that any of the claims (including the Association's causes of action for negligence, breach of express warranty, breach of implied warranty of workmanlike service, and a SCUTPA violation) do not fall under the excluded types of actions. At minimum, it would be premature to find that those claims are not brought against Lennar in its capacity as a service provider. Therefore, even if the court accepted as true that an organization must comply with its internal requirements regarding litigation to have standing to sue, the Association has plausibly alleged that it complied with its bylaws. On those grounds, the court denies the motion to dismiss for lack of standing.

### 2. Standing

As established above, the court denies Lennar's motion to dismiss without fully resolving the issue of standing. In addition to the fact that the complaint plausibly alleges the Association's compliance with the Declaration's requirements, the court finds that it is unsettled whether failure to comply with those requirements will fully destroy the Association's standing. The court evaluates the issue below with the expectation that the parties will further brief their respective positions it in future motions.

In its response to Lennar's motion, the Association cites several state court cases that purportedly reached the opposite conclusion as the one the court reached in Tinsley. As a threshold matter, however, "standing in federal court is a question of federal law, not state law."[2] Hollingsworth v. Perry, 570 U.S. 693, 715 (2013) (explaining that the California Supreme Court's authorization for a party to defend a ballot initiative could not override settled federal law on standing). Several of the Association's cited cases analyzed standing as established by state constitutions or state statutes, and as such, those cases are not persuasive.[3]  See, e.g., Willowmere Cmty. Ass'n, Inc. v. City of Charlotte,

---

[2] Neither party specifies whether the challenge to standing in this case is a challenge to the Association's Article III standing or to its ability to meet the requirements of prudential standing. Certainly, it appears that prudential standing may be implicated here. "Prudential standing entails an inquiry into a plaintiff's role because [it aims] to determine whether the plaintiff is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Life Partners, Inc. v. Miller, 420 F. Supp. 2d 452, 459 (E.D. Va. 2006) (quoting Oxford Assocs. v. Waste Sys. Auth., 271 F.3d 140, 145 (3rd Cir. 2001)). "To satisfy prudential requirements, plaintiff[s] must assert their own legal rights and interests rather than those of a third party." Id. Regardless, both types of standing are matters of federal law.

[3] "That said, where state-created interests are at issue, state law certainly plays a part in the determination of federal standing. In such cases, federal courts look to state law to aid in the definition of the 'injury' a plaintiff may assert to meet [the] Article III requirements." Higdon v. Lincoln Nat'l Ins. Co., 2014 WL 6951290, at *7 (D. Md. Dec. 8, 2014) (collecting cases); see also Gen. Tech. Application, Inc. v. Exro Ltda, 388 F.3d

809 S.E.2d 558, 561 (N.C. 2018) ("As a general matter, the North Carolina Constitution confers standing on those who suffer harm . . . ."); Lake Forest Master Cmty. Ass'n, Inc. v. Orlando Lake Forest Joint Venture, 10 So.3d 1187, 1191 (Fla. Dist. Ct. App. 2009) (eschewing a discussion of standing in the entirety and analyzing whether the meeting at issue complied with Florida's statute governing homeowner's association meetings); Porte Liberte II Condo. Ass'n, Inc. v. New Liberty Residential Urban Renewal Co., LLC, 86 A.3d 730, 737 (N.J. Super. Ct. App. Div. 2014) (analyzing standing as authorized by New Jersey's Condominium Act).

The Association does cite to one federal case, Stolow v. Greg Manning Auction, Inc., 258 F. Supp. 2d 236, 249 (S.D.N.Y. 2003) (cited at ECF No. 5 at 6). However, the court in Stolow was confronted with a slightly different question. There, the issue presented was whether a third party who is neither a member of an association nor a party to the bylaws has standing to bring suit against the organization for a violation of its bylaws. Id. at 249. In response, Lennar argued at the hearing that it is not a stranger to the Declaration because Lennar was directly referenced in the Declaration, it executed the Declaration, and it was, at the times relevant to plaintiff's claims, a member of the Association. The court need not resolve the issue of whether Lennar is a stranger to the Declaration, however, because Stolow did not examine the issue presented in this case. Here—and in Tinsley—the issue is whether an organization has standing if it fails to

---

114, 118 (4th Cir. 2004) ("In a diversity case, we must consult state law to determine the nature of the litigant's rights and whether he is entitled to assert the claims he makes."). Although this action is before the court based on diversity, the dispute over standing does not center on whether the Association suffered an injury or had a basis to assert a legal right under state law. Thus, federal law governs. Furthermore, even if state-created interests were at issue, only South Carolina law (and South Carolina cases) would be authoritative.

comply with its own conditions for commencing an action. In other words, Lennar is not suing the Association to enforce the Declaration. Instead, it argues that the Declaration self-precludes the Association from suing.

As far as the court can tell, then—and certainly as far as the parties have presented—Tinsley is the only case from within this circuit to have examined federal standing based on whether conditions of a litigation provision in a self-governing contract were satisfied. Nevertheless, the court has identified at least one other case that suggests Tinsley does not fully resolve the matter.

In Sunset Homeowners Association, Inc. v. DiFrancesco, the Western District of New York determined that the issue of whether an association complied with its internal procedures only speaks to the existence of "representational standing," and not "organizational standing." 2019 WL 1597497, at *5 (W.D.N.Y. Apr. 15, 2019). In DiFrancesco, a homeowner's association ("HOA") sued two homeowners within its subdivision for allegedly advertising and utilizing their properties as rental units in breach of their restrictive covenants. Id. at *1. The homeowner-defendants moved to dismiss and, in what is now a familiar tune, argued that the HOA did not have standing to commence the action because it did not follow the procedures set forth in its bylaws. Id. at *4. The court agreed to assume that the HOA violated its bylaws by failing to obtain the approval of its Board of Directors prior to initiating the lawsuit. Id. at *5. Even so, the court found that "any such procedural irregularity does not strip the Association of its standing to sue." Id. The court reasoned that if the HOA was solely bringing suit under a theory of associational or representational standing, "it would likely be appropriate to determine the Association's compliance with its 'internal procedures' when it decided to

commence this action."[4]  Id.  However, the court observed that the HOA "has standing in its own right to commence this action pursuant to a theory of 'organizational' standing, as opposed to 'associational' or 'representative' standing."  Id.; see also White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005) (explaining that a plaintiff has organizational standing when it sues "on its own behalf [and] seeks redress for an injury suffered by the organization itself").  In that respect, this case is arguably distinguishable from Tinsley—a case involving a derivative action brought by homeowners on behalf of the association.  As an action brought directly by a HOA, the complaint here presents the possibility that the Association has standing to sue as an organization.  The court ultimately issues no decision on whether the Association possesses organizational standing but notes that it is a matter that warrants further discussion—as well as denial of the motion to dismiss.

### B. Sufficiency of Negligent Misrepresentation Claim

Lennar argues, in the alternative, that if the court does not grant the motion to dismiss for lack of standing, the court should still dismiss the Association's second cause

---

[4] The Supreme Court has recognized that

> an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977).  Although the court in DiFrancesco did not firmly resolve whether the plaintiff had representational standing, at least one other court has dismissed a complaint for failure to allege these bases for representational standing.  See Order, Royal Palm Vill. Residents, Inc. v. Slider, No. 8:19-cv-00874-CEH (M.D. Fla. Feb. 21, 2020), Dkt. No. 46.  In this sense, Royal Palm accords with the District of South Carolina's ruling in Tinsley.

of action for negligent misrepresentation for failure to state a claim. Since the court denied Lennar's motion to dismiss for lack of standing, the court reaches the motion to dismiss the second cause of action. The court ultimately finds that the Association has failed to sufficiently allege a claim for negligent misrepresentation, but the court grants leave for the Association to amend its complaint.

Under South Carolina law, to establish a negligent misrepresentation claim, a plaintiff must show:

> (1) the defendant made a false representation to the plaintiff, (2) the defendant had a pecuniary interest in making the statement, (3) the defendant owed a duty of care to see that [it] communicated truthful information to the plaintiff, (4) the defendant breached that duty by failing to exercise due care, (5) the plaintiff justifiably relied on the representation, and (6) the plaintiff suffered a pecuniary loss as the proximate result of [its] reliance on the representation.

McLaughlin v. Williams, 665 S.E.2d 667, 670 (S.C. Ct. App. 2008). Lennar argues that the Association cannot recover for negligent misrepresentation because the complaint only makes threadbare assertions about false representations and about the Association's justified reliance on those representations. ECF No. 4-1 at 6. Additionally, Lennar argues that the Association fails to allege that it suffered a pecuniary loss as a proximate result of its reliance on a representation.

In response, the Association argues that Lennar fails to consider its factual allegations in tandem with its cause of action. Namely, the Association points out that it alleges Lennar had a duty to create and maintain the capital reserve fund for the Association and Lennar breached that duty by failing to maintain the Dam. ECF No. 5 at 8 (citing Compl. ¶¶ 9–13). In response to the argument that the Association fails to plead a pecuniary loss, the Association explains that the failure to maintain the Dam will

14

require the Association's members to bear the expenses of the repairs, as alleged in the complaint.  Id. (citing Compl. ¶¶ 26, 28).

The court agrees with Lennar that the Association has failed to set forth even a short and plain statement of a negligent misrepresentation claim.  Although South Carolina courts do not apply Rule 9(b)'s heightened pleading standard to negligent misrepresentation claims, Creaturo v. Wells Fargo Bank NA, 2012 WL 13005318, at *4 (D.S.C. Apr. 30, 2012), a plaintiff must still plead "justifiable reliance on the purported misrepresentation," Stegelin v. Pac. Life Ins. Co., 592 F. Supp. 3d 474, 489 (D.S.C. 2022), appeal filed.  Even if the court credits the Association's allegation that Lennar falsely represented common areas and structures in the subdivision were free from defects and deficiencies, the court still finds that the allegation about justifiable reliance is a "formulaic recitation of the reliance element" and is thus "insufficient as a matter of law."  See Stegelin, 592 F. Supp. 3d at 489.  That said, the court also finds the factual allegations about the false representation regarding defects and deficiencies to be lacking.  The (alleged) fact that the Association was obligated to spend funds to repair the Dam does not imply that Lennar made a false representation.  Thus, even when viewed in the light most favorable to the Association, the facts alleged in the complaint do not support a claim against Lennar for negligent misrepresentation.

In its response, the Association asks the court to grant leave for it to amend the complaint if it reaches this conclusion.  Although the preferred procedure would have been for the Association to file a formal motion to amend, the court finds that no prejudice would result from granting such a request.  The Federal Rules of Civil Procedure provide that generally, "[t]he court should freely give leave when justice so

requires." Fed. R. Civ. P. 15(a)(2). "A motion to amend should be denied 'only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" HCMF Corp. v. Allen, 238 F.3d 273, 276 (4th Cir. 2001) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999)) (emphasis in original). The court finds that none of the dangers of amendment are present in this instance. Therefore, the court formally grants the motion to dismiss the second cause of action without prejudice, and the Association will be permitted to file an amended complaint repleading and adding additional allegations to support its claim for negligent misrepresentation.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART** and **DENIES IN PART** the motion in accordance with this order. The Association will have thirty (30) days from the time of this order to file an amended complaint.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**February 14, 2023**
**Charleston, South Carolina**

16